UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FURMINATOR, INC.,                    )
                                     )
            Plaintiff,               )
                                     )
     vs.                             )          Case No. 4:08CV00367 ERW
                                     )
MUNCHKIN, INC., and                  )
KIM LAUBE & CO., INC.,               )
                                     )
            Defendants.              )

**MEMORANDUM AND ORDER**

This matter comes before the Court after a September 18, 2009 hearing, held pursuant to

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) (holding that claim interpretation of

disputed patent terms is "exclusively within the province of the court").

I.     **BACKGROUND FACTS AND PROCEDURAL HISTORY**

On February 26, 2008, FURminator, Inc. filed suit against Munchkin, Inc. and Kim Laube

& Co., Inc., in the Eastern District of Texas. The lawsuit involved allegations of infringement of

United States Patent 7,334,540 ("the '540 Patent"). The '540 Patent protects the alleged

invention of David R. and Angela L. Porter, specifically a pet grooming tool that quickly and

effectively removes loose hair from pets, such as dogs and cats, to reduce shedding. The '540

Patent is the fourth patent in a series of related patents, the first of which was United States

Patent 6,782,846 ("the '846 Patent").

Shortly after Furminator, Inc. filed its lawsuit in the Eastern District of Texas, Munchkin,

Inc. and Kim Laube & Co., Inc. filed this lawsuit against FURminator, Inc. and PorterVision, Inc.,

in the Eastern District of Missouri. Munchkin, Inc. and Kim Laube & Co., Inc.'s lawsuit sought declaratory judgments for noninfringement and invalidity of the '540 Patent, and also alleged various non-patent claims. FURminator, Inc. and PorterVision, Inc. filed a motion with this Court, seeking to have the Missouri case transferred to the Eastern District of Texas, but the motion was denied. Thereafter, the Parties agreed that FURminator, Inc. would voluntarily transfer its Texas case to the Eastern District of Missouri, to be consolidated with this pending case. The Parties were also realigned so that FURminator, Inc. and PorterVision, Inc. would be the plaintiffs in this case, and so that Munchkin, Inc. and Kim Laube & Co., Inc. would be the defendants in this case. On October 8, 2009, PorterVision, Inc. was dismissed from the case, without prejudice, leaving FURminator, Inc. ("Plaintiff") as the sole plaintiff in this case. Munchkin, Inc. and Kim Laube & Co., Inc. (collectively, "Defendants") both remain as defendants.

This matter was set for a *Markman* hearing on September 18, 2009. Prior to the hearing, on June 3, 2009, the Parties submitted a Joint Claim Construction and Prehearing Statement [doc. #89], in which they identify 54 disputed claim terms. The meaning of one of these 54 claim terms was agreed to by the Parties. Subsequently, on July 13, 2009, Plaintiff and Defendants each filed their Opening Brief on Claim Construction [docs. #100, 101]. Additionally, the Court is in receipt of: FURminator, Inc.'s Response Brief on Claim Construction [doc. #126], filed on July 31, 2009; Defendants' Response Claim Construction Brief [doc. #139], filed on August 3, 2009; FURminator's Reply Brief on Claim Construction [doc. #147], filed on August 14, 2009; and Defendants' Reply Claim Construction Brief [doc. #148], also filed on August 14, 2009.

## II.    STANDARD FOR CLAIM CONSTRUCTION

"An infringement analysis involves two steps.  First, the court determines the scope and meaning of the patent claims asserted, and then the properly construed claims are compared to the allegedly infringing device."  *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc) (internal citations omitted).  Because this case involves an infringement analysis, the Court must first construe the patent claim terms.  "[T]he construction of a patent, including terms of art within its claim, is exclusively within the province of the court." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996).

Section 112 of the Patent Act provides that

> [t]he specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

35 U.S.C. § 112.  The statute also specifies that the specification must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."  *Id.*  As the Federal Circuit recognized in *Phillips v. AWH Corp.*, these provisions in the Patent Act "frame the issue of claim interpretation," and present the issue of to what extent a court "should resort to and rely on a patent's specification in seeking to ascertain the proper scope of its claims."  415 F.3d 1303, 1312 (Fed. Cir. 2005).[1]

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Id.* at 1312 (quoting *Innova/Pure Water, Inc.*

---

[1] In their briefs, the Parties rely principally on *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), to support their claim construction arguments.  This Court agrees that *Phillips* is an important case, and will accordingly rely heavily on it in construing the disputed terms in this case.

*v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004); *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("we look to the words of the claims themselves . . . to define the scope of the patented invention"); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995) ("The written description part of the specification itself does not delimit the right to exclude. That is the function and purpose of claims."). "Because the patentee is required to 'define precisely what his invention is,' . . . it is 'unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms.'" *Phillips*, 415 F.3d at 1312 (quoting *White v. Dunbar*, 119 U.S. 47, 52 (1886)).

The Federal Circuit has "frequently stated that the words of a claim 'are generally given their ordinary and customary meaning.'" *Id.* (quoting *Vitronics*, 90 F.3d at 1582). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1313. It is generally understood that inventors are considered to be persons skilled in the field of the invention. *Id.* Additionally, "the person of ordinary skill in the art is deemed to read the claim term . . . in the context of the entire patent, including the specification." *Id.* Thus, the ordinary meaning of the term must be looked at "'in the context of the written description and the prosecution history.'" *Medrad, Inc. v. MRI Devices, Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) (quoting *DeMarini Sports, Inc. v. Worth*, 239 F.3d 1314, 1324 (Fed. Cir. 2001)).

While there will be some claim terms for which the ordinary and customary meaning is readily apparent, this is often not the case. In cases falling into the latter category, the court

should turn to "'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." *Phillips*, 415 F.3d at 1314 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)). Such sources include "'the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.'" *Id.* (quoting *Innova*, 381 F.3d at 1116).

First, the words of the claims "provide substantial guidance as to the meaning of particular claim terms." *Id.* Specifically, "the context in which a term is used in the asserted claim can be highly instructive." *Id.* Additionally, "[o]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term. Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Id.* (internal citation omitted).

Second, the claims "'are part of a fully integrated written instrument,' consisting principally of a specification that concludes with the claims. For that reason, claims 'must be read in view of the specification, of which they are a part." *Id.* at 1315 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978-79 (Fed. Cir. 1995)) (internal citation omitted). As the Federal Circuit originally noted in *Vitronics Corp. v. Conceptronic, Inc.*, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." 90 F.3d 1576, 1582 (Fed. Cir. 1996). However, "although the specification often describes very specific embodiments of the invention, [the

Federal Circuit] has repeatedly warned against confining the claims to those embodiments." *Phillips*, 415 F.3d at 1323. The Federal Circuit has specifically "rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." *Id.*

Third, the Federal Circuit has "held that a court 'should also consider the patent's prosecution history, if it is in evidence.'" *Id.* at 1317 (quoting *Markman*, 52 F.3d at 980). The patent's prosecution history, which is part of the intrinsic evidence, "consists of the complete record of the proceedings before the [United States Patent and Trademark Office] and includes the prior art cited during the examination of the patent." *Id.* "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.*

Finally, although it is not as significant as the previously discussed intrinsic evidence, the Federal Circuit has "authorized district courts to rely on extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" *Id.* (quoting *Markman*, 52 F.3d at 980). Treatises and dictionaries can be helpful in construing claim terms, especially technical dictionaries, which can help the court "'to better understand the underlying technology' and the way in which one of skill in the art might use the claim terms." *Id.* at 1318 (quoting *Vitronics*, 90 F.3d at 1584 n.6). Additionally,

> extrinsic evidence in the form of expert testimony can be useful to a court for a variety of purposes, such as to provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical

aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field. However, conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court. Similarly, a court should discount any expert testimony "that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent."

*Id.* (quoting *Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d 709, 716 (Fed. Cir. 1998)) (internal citations omitted).

Because extrinsic evidence can be helpful, a court has discretion to consider and use it. However, "it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1319. This is because the Federal Circuit has clearly established its view that "extrinsic evidence in general [is] less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.* at 1318. In *Phillips*, the Federal Circuit explained this view:

First, extrinsic evidence by definition is not part of the patent and does not have the specification's virtue of being created at the time of patent prosecution for the purpose of explaining the patent's scope and meaning. Second, while claims are construed as they would be understood by a hypothetical person of skill in the art, extrinsic publications may not be written by or for skilled artisans and therefore may not reflect the understanding of a skilled artisan in the field of the patent. Third, extrinsic evidence consisting of expert reports and testimony is generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence. The effect of that bias can be exacerbated if the expert is not one of skill in the relevant art or if the expert's opinion is offered in a form that is not subject to cross-examination. Fourth, there is a virtually unbounded universe of potential extrinsic evidence of some marginal relevance that could be brought to bear on any claim construction question. In the course of litigation, each party will naturally choose the pieces of extrinsic evidence most favorable to its cause, leaving the court with the considerable task of filtering the useful extrinsic evidence from the fluff. Finally, undue reliance on extrinsic evidence poses the risk that it will be used to change the meaning of claims in derogation of the "indisputable public records consisting of the claims, the specification and the prosecution history," thereby undermining the public notice function of patents.

*Id.* (quoting *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1578 (Fed. Cir. 1995)) (internal citations omitted).

## III.    DISCUSSION

In this case, the '540 Patent contains 78 claims, and the Parties initially identified 54 disputed claim terms.  The Parties have since agreed on constructions for several of the 54 terms. Of the remaining terms, seven groups of related terms were argued at the *Markman* hearing, and the remaining terms were submitted solely on the briefs.  The Court is now obligated to construe the meaning of the disputed claims in accordance with the standards set forth above.

### A.    "A FURRY PET"

Plaintiff argues that the claim term "a furry pet" in claim 1[2] of the '540 Patent means "a pet having fur," while Defendants argue that the claim term means "a pet having fur, examples of which include a cat, a dog, and a horse."  The Court believes that Plaintiff's proposed definition is proper, therefore, the Court construes the term "a furry pet" as "a pet having fur."

### B.    "LOOSE HAIR" AND "NON-LOOSE HAIR"

The terms "loose hair" and "non-loose hair" appear in claim 1, and throughout the '540 Patent.  Plaintiff argues that "loose hair" should be construed to mean "hair that is inactive and not growing," and that "non-loose hair" should be construed to mean "hair that is active and growing."  Plaintiff states that these proposed constructions are supported by the claim language and specification, the prosecution history, and expert testimony.  Defendants suggest that "loose

---

[2]In their Joint Claim Construction and Prehearing Statement Claim Chart, the Parties only identified the first instance of the use of a particular term or phrase in the '540 Patent, although they noted that the terms may appear elsewhere in the claims.  This Court will adopt the same approach.

hair" should be construed to mean "hair that is not attached or fastened to the furry pet," while "non-loose hair" should be construed to mean "hair that is attached or fastened to the furry pet." Defendants argue that these proposed constructions are based on the plain language of the patent and specification, in addition to expert and inventor testimony, and the construction of terms in prior litigation. The Court has determined that the proper construction of the term "loose hair" is "hair that is inactive and not growing," and likewise, that the proper construction of the term "non-loose hair" is "hair that is active and growing." The Court will review the arguments set forth by the Parties in their briefs and in oral argument, in order to establish the basis for the Court's conclusion.

Plaintiff makes numerous arguments in support of its proposed construction of the claim terms at issue. First, Plaintiff asserts that defining "loose hair" to mean "hair that is inactive and not growing," and defining "non-loose hair" to mean "hair that is active and growing," is consistent with the language of the '540 Patent. Specifically, Plaintiff points out that the claim terms are consistently used in the following context: "the blade edge being adapted to engage the loose hair of the pet *and pull it from the pet* without cutting or pulling the non-loose hair from the pet." ('540 Patent, doc. #1-3, p.8 col.4 ll.29-31 (emphasis added)). Plaintiff argues that, as used in the patent language, "loose hair" must include hair that is capable of being "pulled" from the pet. Hair that is not attached or fastened to the pet inherently cannot be included in this category, because there is no need to "pull" hair that is not somehow connected to the pet. This Court finds Plaintiff's argument persuasive, considering that *Phillips* instructs courts that "the context in which a term is used in the asserted claim can be highly instructive." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005).

Similarly, Plaintiff also asserts that its proposed construction is supported by the prosecution history of the '540 Patent. During the prosecution of the '846 Patent, the initial patent in the relevant family of patents, Plaintiff argued to the Board of Patent Appeals that "a blade that is too dull *will not pull the loose hair from the furry pet*." (Pl.'s Ex. 2, doc. #101-3, p.3 (FURMO 577) (emphasis added)). Thus, Plaintiff now argues that "loose hair" must include hair that is still at least partially within the hair follicle, in order to explain the use of the phrase "will not pull the loose hair from the furry pet" during the patent prosecution. The Court again finds Plaintiff's argument persuasive, and notes that "the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention." *Phillips*, 415 F.3d at 1317.

Finally, Plaintiff argues that its proposed constructions of "loose hair" and "non-loose hair" are consistent with prior art cited in the '540 Patent. Specifically, Plaintiff cites to United States Patent Number 6,055,938 ("the '938 Patent"), which was issued less than one month before the '846 Patent application was filed. The '938 Patent discusses the growth cycle of hair, which is the basis for Plaintiff's proposed constructions of "loose hair" and non-loose hair." Specifically, the '938 Patent provides: "[t]he hair on cats and dogs go through growth and resting cycles (anagen and telogen phases, respectively) that occurs asynchronously (each follicle cycles independently) and continuously in the majority of breeds. There are similar processes in humans." ('938 Patent, doc. #101-4, p.6 col.1 ll.13-19). Plaintiff argues, and this Court agrees, that this patent language provides evidence of what a person of ordinary skill in the art would understand about the hair growth cycle, and about the desirability of removing hair that is no

longer growing, but that is still in the hair follicle.[3]  Of course, determining the understanding of a

person of ordinary skill in the art is the ultimate goal of the Court in construing claim terms.  *See*

*Phillips*, 415 F.3d at 1312-13 (noting that "the words of a claim are generally given their ordinary

and customary meaning" and that "the ordinary and customary meaning of a claim term is the

meaning that the term would have to a person of ordinary skill in the art in question at the time of

the invention").  Therefore, the Court finds that Plaintiff's proposed constructions are not only

consistent with the specification and prosecution history, but also with the ordinary and customary

meaning of the claim terms.

Defendants' arguments in support of their proposed constructions of the claim terms

"loose" and "non-loose," on the other hand, are not persuasive.  First, the Court rejects

Defendants' argument that the '540 Patent uses the words "loose" and "shed" interchangeably.

These two words are used in two very different contexts; "shed" is used in the background

section, while "loose" is used in the actual patent claims.  The term "shed" does not appear

anywhere within the claims that this Court is charged to construe.  Additionally, even if "shed" did

appear in the actual claims, the Court would not necessarily find the word to be synonymous with

"loose" because "[i]n the absence of any evidence to the contrary, we must presume that the use

of . . . different terms in the claims connotes different meanings."  *CAE Screenplates Inc. v.*

*Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000).  Ultimately, the words

"shed" and "loose" are not generally considered to mean the same thing, so it is not proper to

make such an assumption.

---

[3]It is generally understood that inventors are considered to be persons skilled in the field of
the invention.  *Phillips*, 415 F.3d at 1313.

In addition to their argument that "loose" is synonymous with "shed," Defendants cite to the testimony of Angela Porter, one of the named inventors on the '540 Patent, to support their proposed construction. The Court does not find such testimony persuasive, considering that the Federal Circuit has instructed courts that "[t]he testimony of an inventor 'cannot be relied on to change the meaning of claims.'" *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1346 (Fed. Cir. 2008) (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 983 (Fed. Cir. 1995) (en banc)). Additionally, Defendants cite to a joint claim construction statement that was filed in another case in the Eastern District of Missouri, involving the same parties, *FURminator, Inc. v. Kim Laube & Co., Inc.*, Case No. 4:06CV01314 RWS (dismissed by stipulation, January 15, 2008). Even though a joint statement was filed, a *Markman* hearing was never actually held in that case, because briefing was delayed by the filing of Plaintiff's Motion to Voluntarily Dismiss, which was ultimately granted. While the Court recognizes that claim terms in related patents should be interpreted consistently, *see generally Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1347-49 (Fed. Cir. 2004), this does not mean that a joint claim construction statement that was never actually examined or adopted by the presiding court has any bearing on the construction of claims in this case.

The Court has set forth and analyzed the arguments made by the Parties in support of their respective proposed constructions,[4] and has concluded that Plaintiff's proposed constructions are proper. Therefore, the Court will construe the claim term "loose hair" to mean "hair that is

---

[4]The Court notes that the Parties included extensive extrinsic evidence (particularly expert testimony) in their briefs to support their proposed constructions. The Court finds that it is unnecessary to examine this extrinsic evidence in order to construe the claim terms, and thus exercises its discretion not to consider it. *Phillips*, 415 F.3d at 1319.

inactive and not growing," and likewise, will construe the claim term "non-loose hair" to mean "hair that is active and growing."

### C.     "REMOVING THE LOOSE HAIR FROM THE PET"

Plaintiff apparently argues that the claim term "removing the loose hair from the pet" in claim 1 of the '540 Patent requires no definition, as its proposed construction mirrors the actual claim term.  Defendants, on the other hand, initially proposed that the claim term be defined as "moving the loose hair away from the pet."  (Joint Chart, doc. #89-2, p.3).  However, Defendants later asserted in their Opening Brief that the term "removing" needs no construction because its meaning is obvious.  (Defs.' Opening Brief, doc. #100, p.20).  Thus, Defendants' position is unclear.  Regardless, the Court finds that the term "removing the loose hair from the pet" is unambiguous and requires no definition.

### D.     "HANDLE PORTION"

The next term to construe is "handle portion," which appears in claim 1 of the '540 Patent.  Plaintiff argues that the meaning of the term is "portion of the grooming tool having a hand-grip portion and a head portion."  Plaintiff asserts that this proposed definition is based on the specification of the '540 Patent, which states that the "handle portion 22 includes a hand-grip portion 26 and a head portion 28."  ('540 Patent, doc. #1-3, p.7 col.2 ll.58-60).  Defendants argue that the meaning of "handle portion" is "the portion of the tool that does not include the pet engageable portion."  Defendants assert that this construction is also based on the language of the '540 Patent, which states, "the only essential components of the pet grooming tool 20 are the handle portion 22 and the pet engageable portion 24."  ('540 Patent, doc. #1-3, p.8 col.3 ll.56-58).

Plaintiff argues that "Defendants' definition does not indicate what a handle portion is. Rather, it merely indicates what it is not." (Pl.'s Opening Brief, doc. #101, p.8). Plaintiff also argues that Defendants cannot claim that the only two components of the patented tool are the handle portion and the pet engageable portion. This is because the cited claim terms are listed under the term "comprising," which is an open-ended term that does not exclude unlisted elements. *See Mars, Inc. v. H.J. Heinz Co., L.P.*, 377 F.3d 1369, 1376-77 (Fed. Cir. 2004). The Court agrees with Plaintiff's arguments and rejects Defendants' proposed definition, "the portion of the tool that does not include the pet engageable portion."

Defendants, challenging Plaintiff's definition, argue that the definition is "ambiguous" and "does not account for all the components found in the claimed invention." (Defs.' Opening Brief, doc. #100, p.12). The Court agrees with Defendants that Plaintiff's definition is somewhat ambiguous, specifically because Plaintiff's proposed definition includes the term "head portion," which would require further definition.

The Court will reject both of the definitions initially proposed by the Parties, and instead adopt a definition that gives the words of the claim their "ordinary and customary meaning." *Phillips*, 415 F.3d at 1312 (internal quotations omitted). "Handle portion" is a term that is sufficiently common and identifiable, and the claim term is apparently not afforded a special meaning of any type in the pet grooming industry. The Court has determined that the "ordinary and customary meaning" of "handle portion" is "portion of the grooming tool that the user holds and that secures the pet engageable portion,"[5] and the Court will construe the term as such. This

_____

[5]This definition was informally proposed by Defendants in the September 18, 2009 *Markman* hearing, and is similar to the everyday description of "handle portion" given by Plaintiff at the same hearing.

14

"ordinary and customary" meaning was readily apparent, so the Court need not consider other intrinsic or extrinsic evidence.

### E.     "THE HANDLE PORTION HAVING A RECESS"

Another term in claim 1 that is at issue is "the handle portion having a recess," although the real dispute with this claim term is only with respect to the term "recess." Plaintiff argues that "the handle portion having a recess" should be construed to mean "the handle portion having an indentation." Plaintiff asserts that its proposed construction is based on the ordinary meaning of the claim term, in conjunction with the drawings included in the patent specification. Defendants argue that the claim term should be construed to mean "the handle portion having a space." They also argue that their proposed construction is based on the ordinary meaning of the claim term, and that it is consistent with inventor testimony.

Both Parties have given the term "recess" what they assert is its "ordinary and customary meaning." *Phillips*, 415 F.3d at 1312 (internal quotations omitted). The Court agrees that this is a term that has a readily apparent meaning and, therefore, that further examination of intrinsic and extrinsic evidence is not necessary. While either definition would be appropriate, the Court has concluded that Plaintiff's proposed construction is more helpful than Defendants' proposal. Accordingly, the Court will construe "the handle portion having a recess" to mean "the handle portion having an indentation."

### F.     "PET ENGAGEABLE PORTION"

The next claim term to construe is "pet engageable portion," which appears in claim 1 of the '540 Patent. Plaintiff suggests that this claim term means "portion of the grooming tool having a blade portion and a plurality of teeth." Plaintiff argues that this construction is consistent

with the patent claims and the specification, which states, "[t]he pet engageable portion includes a blade portion and a plurality of teeth." ('540 Patent, doc. #1-3, p.7 col.2 ll.5-6, p.8 col.3 ll.2-4). Defendants suggest an entirely different definition, "a one-piece blade for an electric animal hair clipper removed from the clipper, such as an Oster A5 40 or 50 blade." Defendants state that their proposed construction is based on similar language that appears in the '540 Patent specification. ('540 Patent, doc. #1-3, p.7 col.2 l.66-p.8 col.3 l.2). The Court finds that Plaintiff's proposed definition is more appropriate than Defendants' proposed definition, however, it is necessary to further define "plurality of teeth," another claim term that this Court construes in a subsequent section. *See infra* Section III(I). Accordingly, the Court will construe the claim term "pet engageable portion" to mean "portion of the grooming tool having a blade portion and more than one tooth."

This definition incorporates the actual language of the patent claims, as adapted to include the Court's construction of the claim term "plurality of teeth". For example, the definition adopts the language of claim 1 of the '540 Patent, which provides: "the grooming tool comprising . . . a pet engageable portion secured to the handle portion, *the pet engageable portion including a blade portion and a plurality of teeth*." ('540 Patent, doc. #1-3, p.8 col.4 ll.19-24 (emphasis added)); *see Phillips*, 415 F.3d at 1314 (noting that the words of the claims "provide substantial guidance as to the meaning of particular claim terms"). The definition is also consistent with the patent specification, which states "[t]he pet engageable portion includes a blade portion and a plurality of teeth," ('540 Patent, doc. #1-3, p.7 col.2 ll.5-6), and "[t]he pet engageable portion 24 includes a blade portion 30 (FIGS. 4 and 5) and a plurality of teeth 32." ('540 Patent, doc. #1-3,

p.8 col.3 ll.2-4); *see Phillips*, 415 F.3d at 1315 (noting that "claims must be read in view of the specification, of which they are a part").

Defendants' suggested construction of "pet engageable portion" is "a one-piece blade for an electric animal hair clipper removed from the clipper, such as an Oster A5 40 or 50 blade." The Court recognizes that this language is taken directly from the '540 Patent. However, the Court notes that the '540 Patent specifically provides that: "[t]he pet engageable portion *may consist of* a one-piece blade for an electric animal hair clipper, such as an Oster A5 blade (size 40 or 50, but preferably size 40) commercially available from Sunbeam Corporation." ('540 Patent, doc. #1-3, p.7 col.2 l.66-p.8 col.3 l.2 (emphasis added)). Thus, it appears that the language relied on by Defendants to support their construction is merely an example of what the blade portion *could be*, not a definitive statement of what it *actually is*. By adopting Defendants' suggested construction, this Court would be improperly limiting the patent claims to exclude certain blades that would otherwise be included. The Court declines to do so.

Thus, the Court will construe the claim term "pet engageable portion" to mean "portion of the grooming tool having a blade portion and more than one tooth."

### G. "A PET ENGAGEABLE PORTION SECURED TO THE HANDLE PORTION"

Plaintiff proposes that the claim term "a pet engageable portion secured to the handle portion" in claim 1 of the '540 Patent means "a pet engageable portion fixed to the handle portion." Defendants include their definition of "pet engageable portion" in their proposed construction of the claim term "a pet engageable portion secured to the handle portion,"[6] but then

---

[6]This definition was rejected by the Court in the preceding section.

go on to say, "which is affixed to the handle portion." As this Court has already construed the claim terms "pet engageable portion" and "handle portion" in preceding sections, it appears that the only dispute remaining with respect to this claim term is the meaning of "secured." Plaintiff proposed "fixed" and Defendants proposed "affixed." According to the Parties' Joint Memorandum Regarding *Markman* Hearing [doc. #179], Defendants are now in agreement with Plaintiff's proposed construction of "secured." This Court agrees with the Parties and, therefore, construes the term "a pet engageable portion secured to the handle portion" to mean "a pet engageable portion fixed to the handle portion."

### H. "BLADE PORTION" AND "THE BLADE PORTION COMPRISING A LEADING SURFACE AND A TRAILING SURFACE DEFINING A BLADE EDGE"

Plaintiff argues that the term "blade portion" in claim 1 should be construed to mean "portion of the pet engageable portion comprising a leading surface and a trailing surface defining a blade edge." This proposed construction adopts the language of the next claim term at issue, "the blade portion comprising a leading surface and a trailing surface defining a blade edge." Plaintiff does not provide a proposed construction for this term, and apparently asserts that the term needs no definition. Defendants do not provide a specific proposed definition for "blade portion," but refer the Court to their proposed construction of "the blade portion comprising a leading surface and a trailing surface defining a blade edge," which they argue should be construed as "the blade portion comprising a surface that leads the trailing surface and a surface that follows behind the leading surface defining a blade edge."

The Court notes that "blade portion" is defined within claim 1 of the '540 Patent, by the claim term "the blade portion comprising a leading surface and a trailing surface defining a blade

edge." This language is essentially identical to Plaintiff's proposed construction of "blade portion." The Court will adopt Plaintiff's proposed construction, and will construe "blade portion" to mean "portion of the pet engageable portion comprising a leading surface and a trailing surface defining a blade edge." Additionally, the Court finds that the claim term "the blade portion comprising a leading surface and a trailing surface defining a blade edge" is unambiguous and, therefore, requires no construction.

## I. "PLURALITY OF TEETH" AND "THE PET ENGAGEABLE PORTION INCLUDING A BLADE PORTION AND A PLURALITY OF TEETH"

The next claim terms to construe are "plurality of teeth," and "the pet engageable portion including a blade portion and a plurality of teeth." These terms are clearly related and dependent upon one another, so the Court will construe them together. Plaintiff argues that "plurality" should be defined as "more than one" and that "teeth" should be defined as "projections." Plaintiff does not propose a definition for "the pet engageable portion including a blade portion and a plurality of teeth," presumably because all significant terms have already been defined. Defendants' proposed definition of "plurality of teeth" is included in its definition for "the pet engageable portion including a blade portion and a plurality of teeth," which they suggest should be construed as "the pet engageable portion comprising a portion that is a blade and has more than one tooth, as in the teeth of a comb." The Court has determined that the proper definition of "plurality of teeth" is simply "more than one tooth," and the proper definition of "the pet engageable portion including a blade portion and a plurality of teeth" is "the pet engageable portion including a blade portion and more than one tooth."

### J. "LEADING SURFACE"

Plaintiff argues that the term "leading surface" in claim 1 should mean "surface of the blade portion that leads the trailing surface as the handle portion is pulled generally along the handle axis." Defendants' proposed definition is included in its previously listed definition for "the blade portion comprising a leading surface and a trailing surface defining a blade edge," and is "a surface that leads the trailing surface." The Court believes that Plaintiff's proposed definition is proper, therefore, the Court construes the term "leading surface" as "surface of the blade portion that leads the trailing surface as the handle portion is pulled generally along the handle axis."

### K. "TRAILING SURFACE"

Plaintiff suggests that the term "trailing surface" in claim 1 should mean "surface of the blade portion that trails the leading surface as the handle portion is pulled generally along the handle axis." Defendants' proposed definition is included in its previously listed definition for "the blade portion comprising a leading surface and a trailing surface defining a blade edge," and is "a surface that follows behind the leading surface." The Court believes that Plaintiff's proposed definition is proper, therefore, the Court construes the term "trailing surface" as "surface of the blade portion that trails the leading surface as the handle portion is pulled generally along the handle axis."

### L. "BLADE EDGE"

The next term to construe is "blade edge." Plaintiff proposes that "blade edge" should mean "the junction of the leading and trailing surfaces," while Defendants propose that the claim term should mean "the portion of the blade formed by the meeting of the leading and trailing

surfaces."  The Court finds that neither of these definitions is proper, and instead construes the term "blade edge" to mean "the union of the leading and trailing surfaces."

### M.  "TEETH EXTENDING FROM THE BLADE EDGE"

Plaintiff argues that the term "teeth extending from the blade edge" in claim 1 should be defined as "teeth projecting from the blade edge."  Defendants do not provide a specific proposed definition for this term, and instead refer the Court to their proposed definition of "at least one of the teeth extending from the blade edge," which they propose should mean "at least one of the teeth stretched out or spread out to greater or fullest length from the blade edge."  Thus, it appears that Defendants' proposed definition of "teeth extending from the blade edge" is "teeth stretched out or spread out to greater or fullest length from the blade edge."  The Court finds that Plaintiff's proposed definition is proper, therefore, the Court construes the claim term "teeth extending from the blade edge" as "teeth projecting from the blade edge."

### N.  "AT LEAST ONE OF THE TEETH EXTENDING FROM THE BLADE EDGE"

The next claim term at issue is "at least one of the teeth extending from the blade edge." Plaintiff proposes a definition of "one or more of the teeth extending from the blade edge," while Defendants propose "at least one of the teeth stretched out or spread out to greater or fullest length from the blade edge."  This Court has already rejected the latter portion of Defendant's proposed definition, in the preceding section in which the claim term "teeth extending from the blade edge" was defined to mean "teeth projecting from the blade edge."  Thus, the dispute with respect to this term is in regard to the first portion of the claim term, "at least one of the teeth." The Court finds that Plaintiff's proposed construction of this first portion is appropriate, but will

change the latter portion of Plaintiff's proposal to include the aforementioned definition of "teeth extending from the blade edge." Therefore, the Court will construe the claim term "at least one of the teeth extending from the blade edge" to mean "one or more of the teeth projecting from the blade edge."

### O. "PET ENGAGEABLE PORTION BEING PARTIALLY POSITIONED WITHIN THE RECESS OF THE HANDLE PORTION"

The Parties also disagree with respect to the construction of the claim term "pet engageable portion being partially positioned within the recess of the handle portion." Many of the words included in this term have already been construed (i.e., "pet engageable portion," "recess," and "handle portion"), but construction of this particular claim term is still necessary. Plaintiff argues that the claim term means "a portion of the pet engageable portion is located within the indentation of the handle portion." Defendants propose "the pet engageable portion being only in part located within the space in the handle portion." The Court finds that Plaintiff's proposed definition is proper. "Pet engageable portion being partially positioned within the recess of the handle portion" is construed to mean "a portion of the pet engageable portion is located within the indentation of the handle portion."

### P. "ENGAGE"

Plaintiff argues that "engage" in claim 1 should be defined as "contact." It is unclear exactly what Defendants assert as their proposed definition, because they refer the Court to their proposed construction for the next term, which does not include an alternative meaning of "engage." Regardless, the Court finds that it is not necessary to construe this claim term, because "engage" is unambiguous.

**Q.    "THE BLADE EDGE BEING ADAPTED TO ENGAGE THE LOOSE HAIR OF THE PET AND PULL IT FROM THE PET"**

Plaintiff asserts that the claim term "the blade edge being adapted to engage the loose hair of the pet and pull it from the pet" should be construed to mean "the blade edge being adapted to engage loose hair of the pet and remove it from the pet." Defendants originally argued that this phrase, combined with several subsequent claim terms, should be construed pursuant to 35 U.S.C. § 112(6) as a means-plus-function limitation. They have since withdrawn this argument (Joint Memo re: Hrg., doc. #179, p.2), and have offered no alternative proposed construction for this claim term. Regardless, the Court finds that the claim term "the blade edge being adapted to engage the loose hair of the pet and pull it from the pet" is unambiguous and requires no definition.

**R.    "WITHOUT CUTTING OR PULLING THE NON-LOOSE HAIR"**

The next claim term to construe is "without cutting or pulling the non-loose hair." Plaintiff proposes a definition of "without severing or plucking the non-loose hair," while Defendants propose a definition of "without severing, detaching, and/or unfastening the non-loose hair." The Court notes that both of these proposed definitions have merit, but finds that the claim term "without cutting or pulling the non-loose hair" is unambiguous and requires no definition.

**S.    "FIRST DIRECTION" AND "AS THE PET ENGAGEABLE PORTION IS MOVED IN A FIRST DIRECTION"**

Plaintiff argues that the term "first direction" in claim 1 should be defined as "direction in which the trailing surface trails the leading surface," and the term "as the pet engageable portion is moved in a first direction" should be defined to mean "as the pet engageable portion is moved, the trailing surface trails the leading surface." Defendants do not provide a proposed definition for

"first direction," and instead refer the Court to their suggested construction for a previous term.

However, the Court was unable to identify precisely what definition, if any, Defendants propose

for the claim term "first direction."  With respect to the term "as the pet engageable portion is

moved in a first direction," Defendants propose the definition "while the pet engageable portion is

moved in a first direction."  The Court finds that the definitions proposed by Plaintiff are

appropriate.  Therefore, "first direction" is construed to mean "direction in which the trailing

surface trails the leading surface," and "as the pet engageable portion is moved in a first direction"

is construed to mean "as the pet engageable portion is moved, the trailing surface trails the leading

surface."

### T.    "IN ENGAGEMENT WITH THE PET" AND "WHILE THE PET ENGAGEABLE PORTION IS IN ENGAGEMENT WITH THE PET"

The next terms to construe are "in engagement with the pet," and "while the pet

engageable portion is in engagement with the pet."  These terms are clearly related and dependent

upon one another, so the Court will construe them together.  Plaintiff proposes "in contact with

the pet" as the meaning of "in engagement with the pet," and then argues that no construction is

necessary for the claim term, "while the pet engageable portion is in engagement with the pet."

Defendants do not provide a specific suggested construction for "in engagement with the pet," but

suggest that "while the pet engageable portion is in engagement with the pet" should be construed

to mean "while the pet engageable portion interacts with or is in contact with the pet."  This

Court has determined that "in engagement with the pet" will be construed to mean "in contact

with the pet," and "while the pet engageable portion is in engagement with the pet" will be

construed to mean "while the pet engageable portion is in contact with the pet."

**U.    "THE FIRST DIRECTION BEING A DIRECTION IN WHICH THE TRAILING SURFACE TRAILS THE LEADING SURFACE"**

Plaintiff argues that "the first direction being a direction in which the trailing surface trails the leading surface" means "as the pet engageable portion is moved, the trailing surface trails the leading surface." Defendants argue that the claim term means "the first direction being a direction in which the trailing surface follows behind the leading surface." The Court finds that Plaintiff's proposed construction is proper, and therefore, "the first direction being a direction in which the trailing surface trails the leading surface" is construed to mean "as the pet engageable portion is moved, the trailing surface trails the leading surface."

**V.    "ELONGATE"**

Plaintiff asserts that the term "elongate" in claim 2 should mean "having greater length than width." Defendants refer the Court to their proposed construction of the term "the handle is elongate about a handle axis" (see Section Y), which is "the portion of the tool that does not include the pet engageable portion has more length than width along the axis defined by the longest dimension of the handle." From this proposed construction, the Court is able to discern Defendants' proposed construction of the term "elongate": "has more length than width." Defendants' definition is virtually identical to Plaintiff's, which the Court believes is proper. Thus, the term "elongate" will be defined as "having greater length than width."

**W.    "HANDLE AXIS"**

The next claim term to construe, which also appears in claim 2, is "handle axis." Plaintiff proposes "a reference axis along which the length of the handle portion projects" as the definition. Defendants again refer the Court to their proposed construction of the term "the handle is

elongate about a handle axis" (see Section Y), which is "the portion of the tool that does not include the pet engageable portion has more length than width along the axis defined by the longest dimension of the handle." From this proposed construction, the Court is again able to discern Defendant's proposed construction of the term "handle axis": "the axis defined by the longest dimension of the handle." The Court finds that Plaintiff's proposed construction is appropriate, and therefore, "handle axis" will be construed to mean "a reference axis along which the length of the handle portion projects."

## X. "THE HANDLE IS ELONGATE ABOUT A HANDLE AXIS"

Plaintiff proposes that the claim term "the handle is elongate about a handle axis" be defined as "the handle has greater length than width and the length of the handle portion projects along a reference axis that constitutes the handle axis." Defendant proposes "the portion of the tool that does not include the pet engageable portion has more length than width along the axis defined by the longest dimension of the handle." The Court finds that it is necessary to construe this claim in accordance with the claim terms that have already been construed, and therefore rejects the definitions proposed by Plaintiff and Defendants. The Court will define "the handle is elongate about a handle axis" to mean "the handle has a greater length than width along the reference axis, along which the length of the handle portion projects."

## Y. "THE HANDLE AXIS IS GENERALLY PERPENDICULAR TO THE LEADING SURFACE"

The next claim term to construe is "the handle axis is generally perpendicular to the leading surface." The Parties have agreed that this claim term should mean "the handle axis is generally at a 90° angle to the leading surface." The Court finds this proposed definition proper,

and will construe "the handle axis is generally perpendicular to the leading surface" to mean "the handle axis is generally at a 90º angle to the leading surface."

> **Z.** **"LEADING SURFACE OF THE PET ENGAGEABLE PORTION IS PLANAR AND IS COINCIDENT WITH A PLANE, AND THE PLANE INTERSECTS THE HANDLE PORTION," "THE LEADING SURFACE OF THE PET ENGAGEABLE PORTION IS PLANAR," "IS COINCIDENT WITH A PLANE," AND "THE PLANE INTERSECTS THE HANDLE PORTION"**

The next four claim terms for the Court to construe are all from claim 3, and they are all related to one another, so the Court will construe them together. Plaintiff's proposed construction for the claim term "leading surface of the pet engageable portion is planar and is coincident with a plane, and the plane intersects the handle portion" is "leading surface is planar and the reference plane containing the leading surface intersects the handle portion." Plaintiff does not provide specific proposed constructions for the terms "the leading surface of the pet engageable portion is planar," "is coincident with a plane," and "the plane intersects the handle portion," rather Plaintiff merely refers the Court to its proposed construction of the first term. Defendant, on the other hand, defines the latter three claim terms, but does not provide a proposed construction of the first term. Specifically, Defendant proposes that "the leading surface of the pet engageable portion is planar" be construed to mean "the leading surface of the pet engageable portion is flat," that "is coincident with a plane" be construed to mean "occupies part of the same place or plane," and that "the plane intersects the handle portion" be construed to mean "the plane has at least one point in common with part of the handle portion."

The claim terms defined by Defendants are combined to create the claim term defined by Plaintiff. The Court will construe the three individual claim terms first, and then finally construe

the longer, combined claim term. With respect to the claim term "the leading surface of the pet engageable portion is planar," the Court finds that Defendants' definition is appropriate, and therefore will construe the claim term to mean "the leading surface of the pet engageable portion is flat." Regarding the claim term "is coincident with a plane," the Court also finds that Defendants' definition is appropriate, and therefore will construe the claim term to mean "occupies part of the same place or plane." With respect to the claim term "the plane intersects the handle portion," the Court finds that the claim term is unambiguous and no construction is necessary. Combining the construction of these three claim terms, the Court concludes that the proper construction of "leading surface of the pet engageable portion is planar and is coincident with a plane, and the plane intersects the handle portion" is "the leading surface of the pet engageable portion is flat and occupies part of the same place or plane, and the plane intersects the handle portion."

### AA. "SURROUNDS" AND "THE HANDLE PORTION SURROUNDS A PORTION OF THE PET ENGAGEABLE PORTION"

The next terms to construe are "surrounds," and "the handle portion surrounds a portion of the pet engageable portion," both of which appear in claim 4. These terms are clearly related and dependent upon one another, so the Court will construe them together. Plaintiff argues that "surrounds" should be construed to mean "circumscribes." Having defined "surrounds," Plaintiff proposes that "the handle portion surrounds a portion of the pet engageable portion" needs no definition. Defendants only offer a definition for the claim term "the handle portion surrounds a portion of the pet engageable portion," but this definition includes their proposed definition of the

claim term "surrounds." Specifically, Defendants propose "the handle portion forms a boundary at least partially around a part of the pet engageable portion."

The definitions of "surrounds" that were proposed by Plaintiff and Defendants are based on what they assert is the claim term's "ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (internal quotations omitted). The Court recognizes that these proposed constructions could be the "ordinary and customary meaning" of the claim term "surrounds." However, the Court believes that neither of these proposed definitions is as informative as the claim term itself. Accordingly, the Court finds that "surrounds" is an unambiguous claim term that will not be defined. Additionally, the Court finds that all of the important words in the claim term "the handle portion surrounds a portion of the pet engageable portion" have been defined. Therefore, this claim term is also unambiguous and requires no further definition.

### BB. "THE LEADING AND TRAILING SURFACES INTERSECT AT AN ANGLE BETWEEN APPROXIMATELY 30º AND 40º AT THE BLADE EDGE"

Plaintiff argues that the term "the leading and trailing surfaces intersect at an angle between approximately 30º and 40º at the blade edge" in claim 5 should be construed to mean "the leading and trailing surfaces form an angle at the blade edge between approximately 30º and 40º ." Defendants argue that the claim term should mean "the leading surface and the trailing surface intersect (have at least one point in common) at an angle between about 30º and 40º at the blade edge." The Court finds that neither of these proposed constructions is proper, because the claim term is unambiguous and requires no construction.

**CC.** **"THE GROOMING TOOL IS DEVOID OF ANY COMPONENTS ADAPTED TO BE DRIVEN BY AN ELECTRICAL POWER SOURCE"**

The next term to be construed is "the grooming tool is devoid of any components adapted to be driven by an electrical power source," from claim 6. Plaintiff suggests that the claim term means "the grooming tool lacks any components adapted to be driven by an electrical power source." Defendants suggest that it means "the grooming tool is without any components configured to be run or operated exclusively by an electrical power source."

The Court believes that, with the exception of the word "devoid," this phrase is unambiguous and requires no definition. With respect to the word "devoid," the Court finds that Plaintiff's proposed construction of the claim term adequately explains what the word means. Accordingly, "the grooming tool is devoid of any components adapted to be driven by an electrical power source" is construed to mean "the grooming tool lacks any components adapted to be driven by an electrical power source."

Defendants' proposed construction of "the grooming tool is devoid of any components adapted to be driven by an electrical power source" inaccurately defines the claim term. Specifically, Defendants' inclusion of the word "exclusively" in their proposed construction improperly implies that the claim excludes only those devices which operate *only* through a power source. This would mean that the claim includes partially automated devices, such as motorized hand-operated grooming tools. This is not consistent with the plain language of the claim. Moreover, it is not entirely clear why Defendants even included the word "exclusively," considering that the claim term does not include that word, or any similar words. Thus, the Court rejects Defendants' proposed construction, and adopts Plaintiff's construction.

**DD. "EACH TOOTH EXTENDS FROM THE BLADE EDGE A LENGTH BETWEEN APPROXIMATELY 0.08" AND 0.14""**

Plaintiff asserts that the term "each tooth extends from the blade edge a length between approximately 0.08" and 0.14"" in claim 7 should be construed to mean "each of the plurality of teeth projects from the blade edge between approximately 0.08" and 0.14"."  Defendants assert that the proper definition is "each tooth stretches out to its greatest dimension from the blade edge between about 0.08 inches and about 0.14 inches."  The Court recognizes the merits of each of these proposed definitions, but will instead adopt the following construction: "each tooth projects from the blade edge between about 0.08 inches and 0.14 inches."

**EE. "TIP TO TIP SPACING BETWEEN ONE OF THE TEETH AND ANOTHER OF THE TEETH ADJACENT SAID ONE OF THE TEETH" AND "TIP TO TIP SPACING BETWEEN ONE OF THE TEETH AND ANOTHER OF THE TEETH ADJACENT SAID ONE OF THE TEETH IS BETWEEN APPROXIMATELY 0.02" TO APPROXIMATELY 0.03""**

The next claims to construe are "tip to tip spacing between one of the teeth and another of the teeth adjacent said one of the teeth" and "tip to tip spacing between one of the teeth and another of the teeth adjacent said one of the teeth is between approximately 0.02" to approximately 0.03"," both of which appear in claim 8.  These claim terms are clearly related and dependent upon one another, so the Court will construe them together.  Plaintiff argues that "tip to tip spacing between one of the teeth and another of the teeth adjacent said one of the teeth" should be construed to mean "space between tips of adjacent teeth," and that "tip to tip spacing between one of the teeth and another of the teeth adjacent said one of the teeth is between approximately 0.02" to approximately 0.03"" should be construed to mean "tip to tip spacing between one of the teeth and another of the teeth adjacent said one of the teeth is between

approximately 0.02" and 0.03"." Defendants incorporate their proposed construction of "tip to tip spacing between one of the teeth and another of the teeth adjacent said one of the teeth" into their proposed construction of "tip to tip spacing between one of the teeth and another of the teeth adjacent said one of the teeth is between approximately 0.02" to approximately 0.03"." Defendants argue that this latter claim term should be construed to mean "the spacing between the end of one pointed or projecting object and the end of another pointed or projecting object adjacent said pointed or projecting object is between about 0.02 inches and about 0.03 inches."

The definitions suggested by Plaintiff and Defendants are all based on what the suggesting party asserts are the claim terms' "ordinary and customary meaning[s]." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (internal quotations omitted). The Court agrees that these are terms that have readily apparent meanings and, therefore, that further examination of intrinsic and extrinsic evidence is not necessary. However, it is the Court's opinion that the "ordinary and customary meaning" suggested by Defendants would actually make the claim terms more difficult to understand than they would be without a definition. Plaintiff's proposed definition, on the other hand, unambiguously sets forth the "ordinary and customary meanings" of the claim terms. Therefore, "tip to tip spacing between one of the teeth and another of the teeth adjacent said one of the teeth" is construed to mean "space between tips of adjacent teeth," and "tip to tip spacing between one of the teeth and another of the teeth adjacent said one of the teeth is between approximately 0.02" to approximately 0.03"" is construed to mean "the space between the tips of adjacent teeth is between approximately 0.02 inches and 0.03 inches."

### FF.    "REMOVING LOOSE HAIR FROM A FURRY PET"

Plaintiff argues that the term "removing loose hair from a furry pet" in claim 12 of the

'540 Patent should be construed to mean "removing loose hair from the pet."  Defendants assert

that the proper meaning is "moving the hair that is not attached or fastened from the pet."  The

Court finds that all of the significant parts of this claim term have been previously construed,

leaving this claim term unambiguous.  Subject to the prior construction, no definition is needed

for this claim term.

### GG.    "PLACING THE PET ENGAGEABLE PORTION IN ENGAGEMENT WITH THE PET"

The next claim term to construe is "placing the pet engageable portion in engagement with

the pet," which appears in claim 12.  Plaintiff suggests that the claim term should de defined to

mean "to cause the blade portion to be in contact with the pet," while Defendants argue that it

should be defined as "putting the pet engageable portion into position to contact or interact with

the pet's coat or fur."  The Court recognizes the similarity between and the merits of both of these

definitions, and constructs its own similar meaning.  "Placing the pet engageable portion in

engagement with the pet" will be construed to mean "putting the pet engageable portion in

contact with the pet."

### HH.    "PULLING THE HANDLE PORTION IN THE FIRST DIRECTION"

Plaintiff proposes that the term "pulling the handle portion in the first direction" in claim

12 should be construed to mean "applying force to the handle portion so as to cause or tend to

cause motion in a first direction, which is toward the location of the application of the force."

Defendants initially argued that this claim term and several subsequent claim terms should, as a

phrase, be construed as a step-plus-function limitation under 35 U.S.C. § 112(6). However, Defendants have withdrawn this objection (Joint Memo re: Hrg., doc. #179, p.2), and it appears to the Court that they assert the following construction of "pulling the handle portion in the first direction": "applying force to the handle portion so as to cause or tend to cause motion towards the source of the force." The Court finds that neither of these proposed constructions is appropriate, and instead construes the claim term to mean "pulling the handle in the direction of the applicable force."

## II. "PULLING THE HANDLE PORTION IN THE FIRST DIRECTION WHILE MAINTAINING ENGAGEMENT OF THE PET ENGAGEABLE PORTION WITH THE PET"

The next term to construe is "pulling the handle portion in the first direction while maintaining engagement of the pet engageable portion with the pet," which appears in claim 12. Plaintiff suggests that the term means "pulling the handle portion in the first direction while keeping the pet engageable portion in contact with the pet." Defendants only propose a definition for "engagement of the pet engageable portion with the pet," presumably because "pulling the handle portion in the first direction" was construed in the preceding section. Defendants' proposal is "the pet engagable portion is interacting with or is in contact with the pet." The Court finds that Plaintiff's proposed definition is appropriate, and therefore "pulling the handle portion in the first direction while maintaining engagement of the pet engageable portion with the pet" will be construed to mean "pulling the handle portion in the first direction while keeping the pet engageable portion in contact with the pet."

34

## JJ. "TO CAUSE THE BLADE PORTION TO ENGAGE THE LOOSE HAIR OF THE PET AND PULL IT FROM THE PET"

Plaintiff argues that the term "to cause the blade portion to engage the loose hair of the pet and pull it from the pet" in claim 12 means "to cause the blade portion to engage the loose hair of the pet and remove it from the pet."  With the exception of their now withdrawn step-plus-function argument, it does not appear that Defendants proposed a construction of this claim term.  Regardless, the Court finds that the claim term "to cause the blade portion to engage the loose hair of the pet and pull it from the pet" is unambiguous and requires no definition.

## KK. "THE LEADING SURFACE IS MAINTAINED GENERALLY PERPENDICULAR TO THE PET DURING THE STEP OF PULLING THE HANDLE IN THE FIRST DIRECTION"

In regard to the term "the leading surface is maintained generally perpendicular to the pet during the step of pulling the handle in the first direction," in claim 13, Plaintiff has proposed the following definition: "the leading surface is roughly perpendicular to the pet during the step of pulling the handle in the first direction."  Defendants argue that the first portion of the claim term ("the leading surface is maintained generally perpendicular to the pet") should be construed to mean "the leading surface is maintained generally at a 90º angle to the pet."  With respect to the second portion of the claim term ("during the step of pulling the handle in the first direction"), Defendants raised the same step-plus-function argument that they raised in the preceding sections, which has now been withdrawn (Joint Memo re: Hrg., doc. #179, p.2).  The Court finds that Plaintiff's suggested construction of the term "the leading surface is maintained generally perpendicular to the pet during the step of pulling the handle in the first direction" is proper.  The

claim term will be construed to mean "the leading surface is roughly perpendicular to the pet during the step of pulling the handle in the first direction."

**LL.    "SOCKET" AND "THE HANDLE PORTION HAVING A SOCKET"**

The next claims to construe are "socket" and "the handle portion having a socket," both of which appear in claim 14.  These claim terms are clearly related and dependent upon one another, so the Court will construe them together.  Plaintiff argues that "socket" means "a cavity," and that having defined "socket," the claim term "the handle portion having a socket" requires no construction.  Plaintiff states that its proposed construction of "socket" is based on the ordinary meaning of the claim term.  Defendants argue that "socket" means "a receptive space," and "the handle portion having a socket" means "the handle portion having a receptive space."  Like Plaintiff, Defendants state that their proposed constructions are based on the claim terms' ordinary meanings.  Defendants also assert that their constructions are consistent with inventor testimony.

Both Parties have given the term "socket" what they assert is its "ordinary and customary meaning."  *Phillips*, 415 F.3d at 1312 (internal quotations omitted).  The Court agrees that this is a term that has a readily apparent meaning and, therefore, that further examination of intrinsic and extrinsic evidence is not necessary.  While either definition would be appropriate, the Court has concluded that Defendants' proposed construction is more helpful than Plaintiff's proposal.  Accordingly, the Court will construe the claim term "socket" to mean "a receptive space," and the claim term "the handle portion having a socket" to mean "the handle portion having a receptive space."

## MM. "PET ENGAGEABLE PORTION BEING PARTIALLY POSITIONED WITHIN THE SOCKET OF THE HANDLE PORTION"

The next term to construe is "pet engageable portion being partially positioned within the socket of the handle portion," which appears in claim 14. Plaintiff suggests that the claim term be defined as "a portion of the pet engageable portion is located within the socket of the handle portion." Defendants suggest that the claim term be defined as "the pet engageable portion being only in part located within the receptive space of the handle portion." The Court finds that Plaintiff's definition is proper, but finds it necessary to incorporate the definition of "socket" set forth in the preceding section. Therefore, "pet engageable portion being partially positioned within the socket of the handle portion" is defined as "a portion of the pet engageable portion is located within the receptive space of the handle portion."

## NN. "THE PLANE INTERSECTING THE HANDLE PORTION"

Plaintiff argues that the term "the plane intersecting the handle portion" in claim 27 should be defined as "the reference plane [that contains the leading surface] intersects the handle portion." Defendants propose the definition "the plane having at least one point in common with the handle portion." The Court finds that neither proposed construction is appropriate because the claim term is unambiguous. No construction of this claim term is necessary.

## OO. "LEADING SURFACE BEING PLANAR AND COINCIDENT WITH A PLANE, THE PLANE INTERSECTING THE HANDLE PORTION"

In claim 27, the Court must also construe the claim term "leading surface being planar and coincident with a plane, the plane intersecting the handle portion." Plaintiff suggests that the claim term means "leading surface is planar and the reference plane containing the leading surface intersects the handle portion." Defendants divided the claim term, and suggest that "the leading

surface of the pet engageable portion is planar" means "the leading surface of the pet engageable portion is flat"; "coincident with a plane" means "occupies part of the same place or plane"; and "the plane intersecting the handle portion" means "the plane having at least one point in common with the handle portion." The Court notes that this claim term is substantially similar to a previous claim term, "leading surface of the pet engageable portion is planar and is coincident with a plane, and the plane intersects the handle portion," which was construed to mean "the leading surface of the pet engageable portion is flat and occupies part of the same place or plane, and the plane intersects the handle portion." Plaintiff's proposed construction of "leading surface being planar and coincident with a plane, the plane intersecting the handle portion" would be inconsistent with this earlier construction. On the other hand, Defendants' proposed construction is more in line with the previous construction, but the Court will impose a few changes for consistency. The claim term "leading surface being planar and coincident with a plane, the plane intersecting the handle portion" is construed to mean "the leading surface is flat and occupies part of the same place or plane, the plane intersecting the handle portion."

## PP. "HANDLE PORTION EXTENDING TO AND BEYOND THE LEADING SURFACE"

Plaintiff argues that the term "handle portion extending to and beyond the leading surface" in claim 39 should be construed to mean "handle portion crosses the plane of the leading surface." Defendants propose the definition "the handle portion stretching to and past the leading surface in any direction." The Court finds that Plaintiff's proposed definition is proper, and therefore, "handle portion extending to and beyond the leading surface" is defined as "handle portion crosses the plane of the leading surface."

38

## QQ.  "THE HANDLE PORTION SURROUNDING A PORTION OF THE PET ENGAGEABLE PORTION"

The final claim term to construe is "the handle portion surrounding a portion of the pet engageable portion," which appears in claim 63.  Plaintiff proposes "the handle portion circumscribes a portion of the pet engageable portion" for its definition, while Defendants propose "the handle portion of the tool forming a boundary at least partially around a portion of the pet engageable portion" for their definition.  The Court finds that this claim term is unambiguous, and therefore, no construction is necessary.

## IV.  CONCLUSION

In summary, the Court concludes that the disputed terms have the following meanings:

1.      "A furry pet" in claim 1 means "a pet having fur."

2.      "Loose hair" in claim 1 means "hair that is inactive and not growing."

3.      "Non-loose hair" in claim 1 means "hair that is active and growing."

4.      "Removing the loose hair from the pet" in claim 1 requires no definition.

5.      "Handle portion" in claim 1 means "portion of the grooming tool that the user holds and that secures the pet engageable portion."

6.      "The handle portion having a recess" in claim 1 means "the handle portion having an indentation."

7.      "Pet engageable portion" in claim 1 means "portion of the grooming tool having a blade portion and more than one tooth."

8.      "A pet engageable portion secured to the handle portion" in claim 1 means  "a pet engageable portion fixed to the handle portion."

9.  "Blade portion" in claim 1 means "portion of the pet engageable portion comprising a leading surface and a trailing surface defining a blade edge."

10. "The blade portion comprising a leading surface and a trailing surface defining a blade edge" in claim 1 requires no definition.

11. "Plurality of teeth" in claim 1 means "more than one tooth."

12. "The pet engageable portion including a blade portion and a plurality of teeth" in claim 1 means "the pet engageable portion including a blade portion and more than one tooth."

13. "Leading surface" in claim 1 means "surface of the blade portion that leads the trailing surface as the handle portion is pulled generally along the handle axis."

14. "Trailing surface" in claim 1 means "surface of the blade portion that trails the leading surface as the handle portion is pulled generally along the handle axis."

15. "Blade edge" in claim 1 means "the union of the leading and trailing surfaces."

16. "Teeth extending from the blade edge" in claim 1 means "teeth projecting from the blade edge."

17. "At least one of the teeth extending from the blade edge" in claim 1 means "one or more of the teeth projecting from the blade edge."

18. "Pet engageable portion being partially positioned within the recess of the handle portion" in claim 1 means "a portion of the pet engageable portion is located within the indentation of the handle portion."

19. "Engage" in claim 1 requires no definition.

20. "The blade edge being adapted to engage the loose hair of the pet and pull it from

the pet" in claim 1 requires no definition.

21. "Without cutting or pulling the non-loose hair" in claim 1 requires no definition.

22. "First direction" in claim 1 means "direction in which the trailing surface trails the leading surface."

23. "As the pet engageable portion is moved in a first direction" in claim 1 means "as the pet engageable portion is moved, the trailing surface trails the leading surface."

24. "In engagement with the pet" in claim 1 means "in contact with the pet."

25. "While the pet engageable portion is in engagement with the pet" in claim 1 means "while the pet engageable portion is in contact with the pet."

26. "The first direction being a direction in which the trailing surface trails the leading surface" in claim 1 means "as the pet engageable portion is moved, the trailing surface trails the leading surface."

27. "Elongate" in claim 2 means "having greater length than width."

28. "Handle axis" in claim 2 means "a reference axis along which the length of the handle portion projects."

29. "The handle is elongate about a handle axis" in claim 2 means "the handle has a greater length than width along the reference axis, along which the length of the handle portion projects."

30. "The handle axis is generally perpendicular to the leading surface" in claim 2 means "the handle axis is generally at a 90º angle to the leading surface."

31. "Leading surface of the pet engageable portion is planar and is coincident with a

plane, and the plane intersects the handle portion" in claim 3 means "the leading surface of the pet engageable portion is flat and occupies part of the same place or plane, and the plane intersects the handle portion."

32. "The leading surface of the pet engageable portion is planar" in claim 3 means "the leading surface of the pet engageable portion is flat."

33. "Is coincident with a plane" in claim 3 means "occupies part of the same place or plane."

34. "The plane intersects the handle portion" in claim 3 requires no definition.

35. "Surrounds" in claim 4 requires no definition.

36. "The handle portion surrounds a portion of the pet engageable portion" in claim 4 requires no definition.

37. "The leading and trailing surfaces intersect at an angle between approximately 30° and 40° at the blade edge" in claim 5 requires no definition.

38. "The grooming tool is devoid of any components adapted to be driven by an electrical power source" in claim 6 means "the grooming tool lacks any components adapted to be driven by an electrical power source."

39. "Each tooth extends from the blade edge a length between approximately 0.08" and 0.14"" in claim 7 means "each tooth projects from the blade edge between about 0.08 inches and 0.14 inches."

40. "Tip to tip spacing between one of the teeth and another of the teeth adjacent said one of the teeth" in claim 8 means "space between tips of adjacent teeth."

41. "Tip to tip spacing between one of the teeth and another of the teeth adjacent said

one of the teeth is between approximately 0.02" to approximately 0.03"" in claim 8 means "the space between tips of adjacent teeth is between approximately 0.02 inches and 0.03 inches."

42.     "Removing loose hair from a furry pet" in claim 12 requires no definition.

43.     "Placing the pet engageable portion in engagement with the pet" in claim 12 means "putting the pet engageable portion in contact with the pet."

44.     "Pulling the handle portion in the first direction" in claim 12 means "pulling the handle in the direction of the applicable force."

45.     "Pulling the handle portion in the first direction while maintaining engagement of the pet engageable portion with the pet" in claim 12 means "pulling the handle portion in the first direction while keeping the pet engageable portion in contact with the pet."

46.     "To cause the blade portion to engage the loose hair of the pet and pull it from the pet" in claim 12 requires no definition.

47.     "The leading surface is maintained generally perpendicular to the pet during the step of pulling the handle in the first direction" in claim 13 means "the leading surface is roughly perpendicular to the pet during the step of pulling the handle in the first direction."

48.     "Socket" in claim 14 means "a receptive space."

49.     "The handle portion having a socket" in claim 14 means "the handle portion having a receptive space."

50.     "The pet engageable portion being partially positioned with the socket of the

handle portion" in claim 14 means "a portion of the pet engageable portion is located within the receptive space of the handle portion."

51. "The plane intersecting the handle portion" in claim 27 requires no definition.

52. "Leading surface being planar and coincident with a plane, the plane intersecting the handle portion" in claim 27 means "the leading surface is flat and occupies part of the same place or plane, the plane intersecting the handle portion."

53. "Handle portion extending to and beyond the leading surface" in claim 39 means "handle portion crosses the plane of the leading surface."

54. "The handle portion surrounding a portion of the pet engageable portion" in claim 63 requires no definition.

Accordingly,

**IT IS HEREBY ORDERED** that all terms at issue shall be defined as articulated above.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike the Opinions and Expert Testimony of Robert O. Schick from Use in Claim Construction Proceedings [doc. #128] is **DENIED, as moot**.

Dated this 9th Day of November, 2009.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE