UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| FURMINATOR, INC., | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 4:08CV00367 ERW |
| KIM LAUBE & CO., INC., | ) ) ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiff FURminator's Motion Under 35 U.S.C. § 283 for Permanent Injunction and Proposed Injunction [doc. #467] and FURminator's Motion for Enhanced Damages Pursuant to 35 U.S.C. § 284 and Prejudgment Interest [doc. #469]. Defendant Kim Laube & Co., Inc. did not respond to Plaintiff's motions. For the following stated reasons, the Court **GRANTS** Plaintiff's Motion for Permanent Injunction, and **GRANTS** Plaintiff's Motion for Enhancement of Damages and Prejudgment Interest.

**Background**

On February 26, 2008, FURminator, Inc. filed suit against Munchkin, Inc. and Kim Laube & Co., Inc., in the Eastern District of Texas. The lawsuit involved allegations of infringement of United States Patent 7,334,540 ("the '540 Patent"). The '540 Patent protects the alleged invention of David R. and Angela L. Porter, specifically a pet grooming tool that quickly and effectively removes loose hair from pets, such as dogs and cats, to reduce shedding. The '540 Patent is the fourth patent in a series of related patents, the first of which was United States

1

Patent 6,782,846 ("the '846 Patent").

Shortly after FURminator, Inc. filed its lawsuit in the Eastern District of Texas, Munchkin, Inc. and Kim Laube & Co., Inc. filed this lawsuit against FURminator, Inc. and PorterVision, Inc., in the Eastern District of Missouri. Munchkin, Inc. and Kim Laube & Co., Inc.'s lawsuit sought declaratory judgments for noninfringement and invalidity of the '540 Patent, and also alleged various non-patent claims. FURminator, Inc. and PorterVision, Inc. filed a motion with this Court, seeking to have the Missouri case transferred to the Eastern District of Texas, but the motion was denied. Thereafter, the Parties agreed that FURminator, Inc. would voluntarily transfer its Texas case to the Eastern District of Missouri, to be consolidated with this pending case. The Parties were also realigned so that FURminator, Inc. and PorterVision, Inc. would be the plaintiffs in this case, and Munchkin, Inc. and Kim Laube & Co., Inc. would be the defendants in this case. On October 8, 2009, PorterVision, Inc. was dismissed from the case, without prejudice, leaving FURminator, Inc. ("FURminator") as the sole plaintiff in this case. On December 7, 2009, this Court entered final judgment for Plaintiff and against Munchkin, Inc., pursuant to a consent motion filed by Plaintiff and Munchkin, Inc. Thus, Kim Laube & Co., Inc. ("Laube") remains as the sole defendant in this case. In its order dated December 15, 2010 [doc. #401], the Court found that the Laube Qwik-Change tool, the Laube Lazor Adjustable Blade Rake tool, and the Laube iVac tool (collectively, "the infringing tools") all infringed on the '540 Patent, and granted Summary Judgment in favor of FURminator. The case was tried to a jury on February 22-25, 2011, on the issue of damages. On February 25th, 2011, the jury rendered its verdict. The jury found that (1) FURminator proved that it suffered $380,000 in lost profits as a result of Laube's infringement of the '540 patent; (2) for those infringing sales for which

FURminator has not proved entitlement to lost profits, FURminator proved a reasonable royalty of $46,270; and (3) FURminator proved by clear and convincing evidence that Laube's infringment of the '540 patent was willful.

**FURminator's Motion for Permanent Injunction and Proposed Injunction [doc. #467]**

The Patent Act gives federal courts the authority to grant permanent equitable relief to patent holders. 35 U.S.C. § 283 provides that "[t]he several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." In *eBay, Inc. v. MercExchange, L.L.C.*, the Supreme Court reiterated that the traditional principles of equity apply when a court is deciding whether to award a permanent injunction against an infringing party. 547 U.S. 388 (2006). Specifically, the plaintiff must show

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* at 1839. "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *eBay*, 547 U.S. at 391.

**A. Irreparable Injury and Inadequacy of Monetary Damages**

In its motion, FURminator is seeking an order to enjoin Laube from manufacturing and selling the infringing tools in the future. FURminator states that the sales of its patented deshedding tools are responsible for the vast majority of FURminator's revenue. FURminator

also states that it "enjoys high margins on its sales" of these tools, which can be attributed, in part, to FURminator's use of "the '540 Patent to stop others from selling competing deshedding tools." FURminator argues that Laube "sells its infringing deshedding tools in direct competition with FURminator," and FURminator will suffer irreparable harm "if it cannot maintain its policy of stopping competitors from selling product encompassed by the '540 Patent." FURminator states that it "has a policy of not granting licenses in the '540 Patent." FURminator further states that if Laube is granted a compulsory license, an increase in competition and Laube's sales will result, which would ultimately serve to erode the price of FURminator's deshedding tools and reduce its sales. FURminator claims that "[e]ven a modest price erosion could cost FURminator millions of dollars annually." FURminator concludes that "because the financial harm to FURminator would probably exceed any revenues generated by Laube's sales, no compulsory royalty rate could adequately compensate FURminator for the harm cause by Laube's sales."

In this case, FURminator has demonstrated that it has suffered an irreparable injury. FURminator went through the time and expense of developing its tools and obtaining patents as protections against infringement. Potential customers were buying infringing tools sold by Laube, instead of purchasing the products sold by FURminator. If this Court fails to grant equitable relief, Laube will be able to continue to sell the infringing tools, which will serve to decrease FURminator's sales and market share. *See Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1329 (Fed. Cir. 2008) ("Adding a new competitor to the market may create an irreparable harm . . . ."). The Court, therefore, believes that an injunction is necessary to prevent Laube from continuing to sell the infringing tools in the future. Furthermore, this Court finds that monetary damages are inadequate to compensate FURminator against future infringement. "[M]onetary

4

damages are not an adequate remedy against future infringement because 'the principal value of a patent is its statutory right to exclude.'" *Acumed LLC v. Stryker Corp.*, 2007 WL 4180682, at *4 (D. Or. 2007) (quoting *Telequip Corp. v. Change Exchange*, 2006 WL 2385425, at *2 (N.D.N.Y. Aug. 15, 2006) (internal citations omitted)). "Relief in the form of monetary damages alone would not meet the ends of justice here because this remedy would allow the infringement to continue." *Smith & Nephew*, *Inc. v. Synthes*, 466 F. Supp. 2nd 978, 984 (W.D. Tenn. 2006); *see also Honeywell Intern., Inc. v. Universal Avionics System Corp.*, 397 F. Supp. 2d 537 (D. Del. 2005) ("[W]hile a monetary award is often an adequate remedy for past infringement, it does not follow that money relief is a sufficient remedy against future infringement.").

**B. Balance of Hardships**

FURminator states that the balance of hardships favors FURminator, rather than Laube, due to the focus of each party's business. FURminator states that "the vast majority of FURminator's revenues come from sales of deshedding tools encompassed by the claims of the '540 Patent," in contrast to "Laube's primary business [of] selling animal clippers." FURminator further argues that Laube has "been selling infringing deshedding tools for only the past few years, and only after it became aware of FURminator's deshedding tools." FURminator also argues that, while the "[e]ntry of a permanent injunction would not prevent Laube from continuing its core business," the "non-entry of a permanent injunction would cause irreparable harm to FURminator's core business." This Court agrees that the commercial effect of an injunction would cause less harm to Laube than that which FURminator would experience if none is granted. The Court finds, after balancing the hardships faced by both parties, that the balance of hardships favors FURminator.

## C. Public Interest

FURminator argues that "[n]o evidence in the present case indicates that the public interest would be disserved by a permanent injunction against Laube's sales of infringing products." As noted, Laube has not responded to FURminator's motion in order to dispute this contention. The Court finds that a permanent injunction will not disserve the public interest. "[T]he public maintains an interest in protecting the rights of patent holders, and injunctions serve that interest." *Smith & Nephew*, 466 F. Supp. 2d at 985. Thus the Court, in the exercise of its discretion and based on the four factors set out in *eBay*, will grant Plaintiff's equitable relief. The Court will enter an injunction with the following terms:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Kim Laube & Co., Inc., its officers, directors, shareholders, distributors, employees, servants, agents and attorneys, all heirs, successors and assigns, any and all companies controlled by Laube or any of its officers, directors, shareholders or employees, and those acting in concert or participation therewith, shall not:

(a) manufacture, use, sell, offer for sale, display on any website or in any form of advertisement, or import into the United States: the Laube Quik-Change tool, the Laube Lazor Adjustable Blade Rake tool, the Laube iVac tool, any tool that is not more than colorably different from the Laube Quik-Change tool, any tool that is not more than colorably different from the Laube Lazor Adjustable Blade Rake tool, and any tool that is not more than colorably different from the Laube iVac tool;

(b) induce others to manufacture, use, sell, offer for sale, display on any website or in any form of advertisement, or import into the United States: the Laube Quik-Change tool, the Laube Lazor Adjustable Blade Rake tool, the Laube iVac tool, any tool that is not more than colorably different from the Laube Quik-Change tool, any tool that is not more than colorably different from the Laube Lazor Adjustable Blade Rake tool, and any tool that is not more than colorably different from the Laube iVac tool;

© manufacture, use, sell, offer for sale, display on any website or in any form of advertisement, or import into the United States any component that is both (I) not a staple article of commerce suitable for substantial noninfringing use with respect to U.S. Patent No. 7,334,540, and (ii) is a component of one or more of the following: the Laube Quik-Change tool, the Laube Lazor Adjustable Blade Rake tool, the Laube iVac tool, any tool that is not more than colorably different from the Laube Quik-Change tool, any tool that

>    is not more than colorably different from the Laube Lazor Adjustable Blade Rake tool, and any tool that is not more than colorably different from the Laube iVac tool.

This injunction shall take effect one week from the date of this order, and shall remain in force until the expiration of U.S. Patent No. 7,334,540.

**FURminator's Motion for Enhanced Damages and Prejudgment Interest [doc. #469]**

Under section 284 of the Patent Act, the Court is required to award "damages adequate to compensate for the infringement." 35 U.S.C. § 284. In this case, the issue of damages was tried by the jury. As previously noted, the jury found: (1) FURminator proved that it suffered $380,000 in lost profits as a result of Laube's infringement of the '540 patent, (2) for those infringing sales for which FURminator has not proved entitlement to lost profits, FURminator proved a reasonable royalty of $46,270, and (3) FURminator proved by clear and convincing evidence that Laube's infringment of the '540 patent was willful. FURminator now moves for enhanced damages and prejudgment interest in accordance with the jury's finding of willfulness. Specifically, FURminator requests that this Court triple the amount awarded by the jury and combine it with the reasonable royalty award, for a total award of $1,186,270. FURminator additionally requests that this Court award prejudgment interest on FURminator's award at the Missouri statutory rate of 5.16% on the reasonable royalty and lost profits jury award in the amount of $69,450.07.

Section 284 authorizes the Court, in its discretion, to "increase the damages up to three times the amount found or assessed," but does not provide any criteria to aid in this determination. 35 U.S.C. § 284. However, the process for increasing damages has been interpreted as requiring a two-step analysis. *State Indus. v. Mor-Flo Indus.*, 948 F.2d 1573, 1576 (Fed. Cir. 1991). "First, the fact-finder must determine whether an infringer is guilty of conduct

upon which increased damages may be based. If so, the court then determines, exercising its sound discretion, whether, and to what extent, to increase the damages award given the totality of the circumstances." *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1570 (Fed. Cir. 1996) (citing *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-27 (Fed. Cir. 1992)). A finding of willfulness is considered a sufficient basis for an award of enhanced damages. *State Indus.*, 948 F.2d at 1576.

In regards to the first step, the jury found that Laube's infringement of the '540 patent was willful. That leaves only the second step, whether enhanced damages are appropriate, to consider. To support its Motion, FURminator relies on *Read Corp. v. Portec, Inc.*, which states that "[t]he paramount determination in deciding to grant enhancement and the amount thereof is the egregiousness of the defendant's conduct based on all facts and circumstances." 970 F.2d 816, 826 (Fed. Cir. 1992). In *Read*, the court listed several factors to be considered in determining whether to enhance damages and the amount of enhancement: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the infringer's size and financial condition; (5) closeness of the case; (6) duration of the infringer's misconduct; (7) remedial action by the infringer; (8) the infringer's motivation for harm; and (9) whether the infringer attempted to conceal its misconduct. *See Read*, 970 F.2d at 827. FURminator addresses each of the *Read* factors in its motion and argues that all the factors favor FURminator.

***Read* factor No. 1: Whether Laube Deliberately Copied the Ideas or Design of FURminator**

In regards to the first factor, FURminator argues that the evidence reveals that Laube copied the ideas and design of FURminator. FURminator states that David and Angela Porter, the inventors of the '540 Patent, developed a commercial embodiment of their invention and began selling it, only to later have Laube copy the design and sell it. FURminator argues that Laube's claims regarding the design process of the infringing tools are "too incredible to believe," due to inconsistent statements Laube made regarding the development of the infringing products and Laube ultimately admitting to this Court that it "has no design and development documents pertaining to any issue in this case." There is sufficient evidence in this case that Laube deliberately copied FURminator's design and ideas. In *Read*, the court stated that, "'Ideas' and 'design' would encompass, for example, copying the commercial embodiment, not merely the elements of a patent claim." *Read*, 970 F.2d at 827. This Court ruled in favor of FURminator on its motion for summary judgment and found that three of Laube's tools infringed the '540 Patent, and the jury determined that this infringement was willful. These findings, consequently, appropriately show that Laube deliberately copied the ideas and designs of FURminator, and weigh in favor of granting enhanced damages.

***Read* factor No. 2: Whether Laube, When it Knew of Furminator's Patent Protection, Investigated the Scope of the Patent and Formed a Good-Faith Belief that it was Invalid or that it was Not Infringed**

FURminator argues that, notwithstanding knowing about FURminator's patent protection for years, Laube never conducted an adequate investigation into FURminator's patent protection. FURminator points out that "Laube presented no evidence that it ever investigated the scope of FURminator's patent protection in an attempt to respect FURminator's patents and design around

9

them." FURminator argues that "[t]he evidence does establish, however, that Laube knew of FURminator's patent protection and yet launched a third accused product," and "[a]t no point after learning of FURminator's patent protection did Laube alter its course of infringement." FURminator also argues that Laube's submission of a fake tool as evidence and then lying about that tool under oath, reveals that "Laube did not have a good-faith belief that it did not infringe the '540 Patent, or that the '540 Patent was invalid."

The Court previously addressed this issue in its December 15, 2010 order granting Summary Judgment in favor of FURminator [doc. #401]. Furthermore, in the Court's December 21, 2009 Order [doc. #313], the Court found that Mr. Laube himself (not his attorneys) had acted in bad faith and committed a fraud on the Court. Specifically, the Court found that Mr. Laube had fabricated a fake pet grooming tool and falsely identified it as the "commercial embodiment" of U.S. Patent No. 5,339,840 ("the Koppel patent"), and as "prior art" to the '540 Patent. The Court also found that Mr. Laube then engaged in a series of actions designed to deceive Plaintiff and this Court into believing that the fake pet grooming tool was actually in existence before the effective day of the '540 Patent. This factor weighs heavily in favor of FURminator and the granting of enhanced damages.

### *Read* factor No. 3: Laube's Behavior as a Party to the Litigation

In support of this factor weighing in its favor, FURminator cites to this Court's previous condemnation of Laube's behavior throughout this case. In the December 21, 2009 Order, as already noted, this Court stated that Mr. Laube's fabrication of a fake pet grooming tool was merely the latest in a pattern and practice of misrepresentations and misconduct in this case. As noted previously by this Court, there is evidence that Mr. Laube fabricated or modified at least

one other pet grooming tool, and that he gave conflicting testimony in another court regarding whether he had design documents to support his assertion that he had been designing tools similar to the FURminator DeShedding Tools since 1975. Upon considering the misconduct of Mr. Laube in this case and the possible sanctions it could issue, the Court determined that it was appropriate to strike Mr. Laube's testimony and related evidence. The Court believes that the sanction was appropriate, considering the seriousness of the fraudulent actions. This factor weighs heavily in favor of FURminator and the granting of enhanced damages.

***Read* factor No. 4: Laube's Size and Financial Condition**

FURminator argues that "Laube is a large enough company to absorb enhanced damages." FURminator points out that "Laube operates on a global scale" and "has proven to have the means to file numerous lawsuits across the country against FURminator and other entities." The Court is not persuaded that this factor weighs in FURminator's favor. FURminator has not provided sufficient evidence to support its contention that "Laube's financial condition will not be substantially affected by the Court's ruling on enhanced damages." However, the lack of evidence for this factor is not dispositive on the issue of whether enhanced damages are unwarranted, particularly in light of the Court's analysis of the preceding factors that weigh heavily in favor of FURminator. As FURminator points out, this factor is not determinative, and is just one of many courts consider.

***Read* factor No. 5: The Closeness of the Case**

FURminator argues that this case was not close due to this Court's determinations on infringement and the validity of the '540 Patent being decided by summary judgment. The Court agrees with FURminator's assessment that this factor weighs in its favor and enhancement of

damages. The evidence was not so insufficient to prevent the Court from being unable to dispose of the infringement and validity issues on summary judgment.

***Read* factor No. 6: The Duration of Laube's Misconduct**

FURminator argues that this favor weighs heavily in its favor and states that "Laube's pattern and practice of misrepresentations and misconduct pervades this entire three-year lawsuit." FURminator refers to this Court's acknowledgments of "Laube's inconsistencies and lies" in July 2009 and December 2009 (docs. #113 and #313), and also argues that "Laube's evasive tactics continued through trial." This factor weighs heavily in favor of FURminator and enhancing damages.

***Read* factor No. 7: Remedial Action Taken by Laube**

FURminator argues that this factor weighs heavily in its favor because "Laube never took any remedial action." As examples of Laube's failure to take remedial action, FURminator states that "Laube did not design around or make any other good faith effort to avoid infringement," and "continued to manufacture the accused products" notwithstanding facing a patent infringement lawsuit. FURminator also argues that "Laube failed to mitigate its infringement," and "made no effort to stop its infringement." FURminator also states that "Laube continued to offer for sale and sell the accused products on its website," even though this Court found on summary judgment that Laube infringed the '540 Patent. This factor weighs in favor of FURminator.

***Read* factor No. 8: Laube's Motivation for Harm**

FURminator argues that "Laube's motivation was either to enable Laube to steal FURminator's intellectual property or to destroy the valuable patent portfolio of FURminator." The Court is not persuaded that this factor weighs in FURminator's favor, based on the

12

insufficiency of the evidence provided in FURminator's motion to corroborate these allegations. Laube's infringement was willful, and its products directly competed with FURminator's, but there is no significant evidence that Laube's primary motivation was to harm FURminator by infringing on the '540 Patent. No weight is ascribed in favor of FURminator for this factor.

*Read* **factor No. 9: Whether Laube Attempted to Conceal its Misconduct**

FURminator argues that "Laube knew it had no credible case against FURminator, and it resorted to lies and deception as its only means to prevail against FURminator." To support this contention, FURminator argues that "[r]ather than stop its infringement, Laube attempted to conceal it by injecting the fake Koppel tool into this lawsuit." This Court has already addressed Laube's conduct in regards to this matter. Having previously found that Mr. Laube engaged in a series of actions designed to deceive FURminator and this Court into believing that the fake pet grooming tool was actually in existence before the effective day of the '540 Patent, it is undeniable that Laube attempted to conceal its misconduct. Therefore, this factor weighs heavily in favor of FURminator.

Due to the egregiousness of Laube's conduct, the Court finds that enhanced damages are appropriate. An evaluation of the *Read* factors overwhelmingly supports FURminator's conclusion that the totality of the circumstances warrants enhanced damages. Thus, this Court, in the exercise of its discretion, grants FURminator's request to enhance its award of damages.

**Prejudgment Interest**

Title 35 of the United States Code, Section 284 authorizes a court to award prejudgment interest on patent infringement damages. Although an award of prejudgment interest is not automatic, it "should be awarded . . . absent some justification for withholding such an award."

*Gen. Motors Corp. v. Devex Corp.,* 461 U.S. 648, 657 (1983). The Court finds that both prejudgment and post-judgment interest are appropriate in this case.

Accordingly,

**IT IS HEREBY ORDERED** that FURminator's Motion Under 35 U.S.C. § 283 for Permanent Injunction and Proposed Injunction [doc. #467] is **GRANTED,** as stated in the language described above in the Court's analysis.

**IT IS HEREBY FURTHER ORDERED** that FURminator's Motion for Enhanced Damages Pursuant to 35 U.S.C. § 284 and Prejudgment Interest [doc. #469] is **GRANTED**. The jury verdict award of $380,000 for lost profits shall be doubled to an award of damages totaling $760,000, to be combined with the jury verdict award of $46,270 for reasonable royalty, for a total award of $806,270. Prejudgment interest is awarded to FURminator, in the amount of $69,450.07, which covers the date of initial infringement to the entry of judgment.

**IT IS HEREBY FURTHER ORDERED** that FURminator is granted post-judgment interest pursuant to 28 U.S.C. § 1961, at a rate equal to the weekly average 1-year constant maturity Treasury yield, compounded annually, to run from the date of entry of the judgment until such time that Laube satisfies the total amount of money damages stated herein.

Dated this <u>30th</u> Day of <u>March</u>, 2011.

                                                E. RICHARD WEBBER
                                                SENIOR UNITED STATES DISTRICT JUDGE